UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORINIA

DARREN P.,[1]

Plaintiff,

v.

FRANK BISIGNANO, *Commissioner of Social Security*,

Defendant.

Case No.: 25cv2261-MSB

**ORDER ENTERING JUDGMENT; REVERSING COMMISSIONER'S DECISION; AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

**[ECF NOS. 15 & 18]**

On August 29, 2025, Plaintiff Darren P. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final adverse decision by the Commissioner of Social Security ("Commissioner"). (ECF No. 1.) Based on all parties' consent [ECF Nos. 3–4], this case is before the undersigned as presiding judge for all purposes, including entry of final judgment. 28 U.S.C. § 636(c). Now pending before the Court is Plaintiff's Brief claiming error by the Administrative Law Judge ("ALJ") who conducted the administrative hearing and issued the decision denying Plaintiff's

[1] Under Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the Court in [Social Security cases under 42 U.S.C. § 405(g)] will refer to any non-government parties by using only their first name and last initial."

application for disability insurance benefits. (ECF No. 15.) The Court has carefully reviewed the Complaint [ECF No. 1], the Administrative Record ("AR") [ECF No. 7], Plaintiff's Brief [ECF No. 15], and the Commissioner's Responsive Brief [ECF No. 18].[2] For the reasons set forth below, the Court **ORDERS** judgment be entered **REVERSING** the Commissioner's decision and **REMANDING** this matter for further administrative proceedings consistent with this Order.

## I. PROCEDURAL BACKGROUND

On May 4, 2022, Plaintiff applied for disability insurance benefits under Titles II and XVIII of the Social Security Act, alleging disability beginning on July 1, 2006. (AR 143.) The Commissioner denied the claim initially on August 29, 2022, and again upon reconsideration on December 22, 2022. (AR 52–60; 61–69.) On February 6, 2023, Plaintiff sought an administrative hearing before an ALJ. (AR 80–81.) ALJ Eric Benham held an administrative hearing on August 15, 2023, during which Plaintiff appeared with counsel. (AR 30–51.) Plaintiff and the vocational expert, Sonia Peterson, testified. (Id.) In a written decision dated July 23, 2024, the ALJ concluded Plaintiff had not been under a disability "at any time from July 1, 2006, the alleged onset date, through December 31, 2008, the date last insured." (AR 25.)

On September 4, 2024, Plaintiff requested the Appeals Council review the ALJ's decision. (AR 141–42.) The Appeals Council denied the request for review on July 3, 2025. (AR 1–6.) Plaintiff then sought review by this Court on August 5, 2025. (ECF No. 1.)

## II. SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ applied the Commissioner's five-step sequential evaluation process. 20 C.F.R. § 404.1520. At step one, the ALJ found Plaintiff had not

[2] "AR" refers to the Administrative Record lodged with this Court on December 10, 2025. (ECF No. 7.) The Court's citations to the AR use the page references on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by the CM/ECF.

engaged in substantial gainful activity from July 1, 2006, through December 31, 2008, the date last insured. (AR 20.)

At step two, the ALJ found Plaintiff had the following severe impairments: chronic fatigue (myalgic encephalomyelitis) and chronic tension headaches. (Id.) The ALJ noted these medically determinable impairments significantly limit Plaintiff's ability to perform basic work activities. (Id.)

At step three, the ALJ determined, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the Commissioner's Listing of Impairments. (AR 21.) Specifically, the ALJ found Plaintiff's physical impairments did not meet or medically equal listing 11.00 (neurological disorders) or any other listing. (Id.)

Before proceeding to step four, the ALJ determined, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to "perform light work . . . except [Plaintiff] was unable to climb ladders, ropes, or scaffolds. [Plaintiff] was able to occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. [Plaintiff] was able to perform simple work." (AR 21.)

At step four, the ALJ found Plaintiff has no past relevant work. (AR 24.)

Finally, at step five, the ALJ determined, based on the vocational expert's testimony, jobs exist in significant numbers in the national economy that Plaintiff can perform considering his age, education, work experience, and RFC.[3] (AR 24–25.) Thus, the ALJ concluded Plaintiff had not been under a disability from July 1, 2006, through December 31, 2008. (AR 25.)

/ /

/ /

---

[3] The ALJ determined Plaintiff could perform following occupations: Office Helper, Dictionary of Occupational Titles ("DOT") 239.567-010, light, unskilled, 90,000 jobs nationally; Price Marker, DOT 209.587-034, light, unskilled, 90,000 jobs nationally; and Housekeeper/Cleaner, DOT 323.687-014, light, unskilled, 150,000 jobs nationally. (AR 25.)

## III. DISPUTED ISSUES

Plaintiff raises two issues as grounds for reversal:

1. Whether the ALJ properly considered Plaintiff's subjective symptom testimony;

2. Whether the ALJ's RFC determination is supported by substantial evidence.

## IV. STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited, and the denial of benefits will only be disturbed if the final decision is not supported by substantial evidence or contains a legal error. Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018) (citation modified). "Substantial evidence" is a "'term of art' used throughout administrative law to describe how courts are to review agency factfinding." Biestek v. Berryhill, 587 U.S. 97, 102 (2019) (quoting T-Mobile S., LLC v. Roswell, 574 U.S. 293, 301 (2015)). The Supreme Court has said substantial evidence means "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)) (citation modified). The Ninth Circuit explained that substantial evidence is "more than a mere scintilla, but less than a preponderance." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y of Health & Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988)) (citation modified).

The reviewing court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." See Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007)) (citation modified). Overall, the substantial-evidence standard is "highly deferential." Kitchen v. Kijakazi, 82 F.4th

732, 738 (9th Cir. 2023) (citing Rounds v. Comm'r, 807 F.3d 996, 1002 (9th Cir. 2015)). Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation modified) (quoting Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004)). This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citing Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)). Thus, the court may overturn the ALJ's decision only if the ALJ's conclusions are not supported by substantial evidence or the ALJ applied the wrong legal standard. Smith v. Kijakazi, 14 F. 4th 1108, 1111 (9th Cir. 2021); Batson, 359 F.3d at 1193. However, the reviewing court "may not reverse an ALJ's decision on account of an error that is harmless." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1055–56 (9th Cir. 2006)), superseded on other grounds as stated in Thomas v. Saul, 830 F. App'x 196, 198 (9th Cir. 2020).

## V. DISCUSSION

### A. Whether the ALJ Properly Considered Plaintiff's Subjective Symptom Testimony

Plaintiff argues the ALJ failed to articulate clear and convincing reasons supported by substantial evidence for rejecting his subjective symptom testimony. (ECF No. 15 at 10–14.) In response, the Commissioner argues the ALJ's decision should be upheld because he "reasonably found Plaintiff's impairments were not as severe as alleged because Plaintiff reported improvement with medication, he had normal medical imaging and physical examinations, and there were large gaps in the treatment record, especially during the relevant period of 2006 to 2008." (ECF No. 18 at 20 citing AR 21–22.)

#### 1. Applicable law

When evaluating the credibility of a claimant's allegations regarding subjective symptoms such as pain, the ALJ must engage in a two-step analysis. Johnson v. Kijakazi, No. 19-17359, 2022 WL 1553259, at *1 (9th Cir. May 17, 2022); Lingenfelter, 504 F.3d at

1035–36. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017) (quoting Garrison, 759 F.3d at 1014–15), superseded on other grounds as stated in Kristin M.A. v. O'Malley, No. 23-CV-64-JMK, 2024 WL 21395, at *5 (D. Alaska Jan. 2, 2024). The claimant is not required to show that an underlying impairment could reasonably be expected to cause the severity of the pain or other symptoms alleged, but only that it could have reasonably caused some degree of the symptoms. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter, 504 F.3d at 1036).

Second, if the claimant meets the first step and there is no evidence of malingering, then the ALJ may reject the claimant's statements about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." Trevizo, 871 F.3d at 678 (quoting Garrison, 759 F.3d at 1014–15). "The clear and convincing standard is the most demanding required in Social Security cases." Revels, 874 F.3d at 655 (citation modified). General findings are insufficient, and the ALJ must identify which specific pain and symptom statements are being discounted and what evidence undermines those claims. See Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citing Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014)); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) ("The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints.").

"Because symptoms, such as pain, are subjective and difficult to quantify," the ALJ must consider "all of the evidence presented," including information about the claimant's prior work record, statements about their symptoms, evidence submitted by medical sources, and observations by the Agency's employees and other persons. 20 C.F.R §§ 404.1529(c)(3), 416.929(c)(3). Factors the ALJ may consider, in addition to objective medical evidence, include Plaintiff's daily activities; the location, duration, frequency, and intensity of their pain or other symptoms; precipitating and aggravating

factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain; treatment; and any other measures used to relieve pain. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); Social Security Ruling ("SSR") 16-3P, 2017 WL 5180304, at *7–8 (S.S.A. Oct. 25, 2017). The ALJ may also consider inconsistencies between Plaintiff's statements regarding pain and the medical evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); SSR 16-3p, 2017 WL 5180304, at *8–9.

**2. Plaintiff's testimony**

At the administrative hearing on August 15, 2023, Plaintiff testified he last worked in 2021 as a musician. (AR 34.) Plaintiff reported he experiences "all day pain" and "severe fatigue affecting every branch of [his] body" due to severe chronic fatigue syndrome. (AR 35.) Plaintiff reported at baseline, he feels like he has "the flu, a hangover and [he] ran a marathon." (AR 44.) Additionally, Plaintiff testified "within chronic fatigue syndrome, [there] are unpredictable and predictable crashes, also known as post-exertional malaise" that leave Plaintiff "bed-bound for up to weeks at a time." (AR 35.) Plaintiff explained "after exposure to physical and cognitive stressors," his symptoms worsen and result in "slow information processing, learning, [and] ret[ention]." (AR 39.) Plaintiff testified he is "[n]o longer able to sight read professional level music notation," "compose," "keep up with apartment, house cleaning," and has "[l]imited reading" and "direction following" abilities. (AR 39–40.) Plaintiff testified that from 2006 to 2008 he could not do "over 15 minutes of anything mentally exertive" or "over 30 minutes of mindless housecleaning or enjoyable bass playing without needing to lie down or recline for long periods of time, at least 45 minutes." (AR 41.) Additionally, Plaintiff testified he could not stand for more thirty minutes at a time, could not sit for more than forty-five to sixty minutes at a time, and he has "not been able to lift a gallon of milk with one arm since the end of 2009 [due to] a neck injury." (AR 42.)

Plaintiff testified between approximately 2001 and 2010, he lived alone and "did [his] own shopping," but did not drive a car because he "did not feel safe driving after

about a half an hour" due to being "dizzy," "lightheaded," and feeling like he was "out of [his] body." (AR 37–38.) His "parents have been [his] caregivers since January of 2010." (AR 37.) When asked about what he does throughout the day, Plaintiff responded he is "definitely housebound for the most part." (Id.) Plaintiff reported "treatment and medication have definitely helped lessen some of the severity of the symptoms," but "as far as curing anything, no, no success." (AR 36.) Plaintiff testified that "there has been a lot of treatment; hyperbaric chamber, a lot of electronic stimulation," and his treatment is currently "a matter of pacing and homecare, just lots of medication, lots of supplements, lots of diet." (Id.)

**3. The ALJ's findings**

The ALJ began his credibility analysis by summarizing Plaintiff's testimony as follows:

> The claimant is a 51-year-old man who alleges disability due to chronic fatigue (myalgic encephalomyelitis) and chronic tension headaches. He alleges that he stopped working in December 2021 due to his alleged impairments. He alleges that everything is worse. He alleges difficulty with household tasks, personal care and getting around. He alleges that he does not engage in social activities. He alleges that he is more confined to bed than ever. He alleges chronic pain. He alleges increased dizziness.

(AR 21.)

The ALJ then found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 21–22.)

The ALJ next summarized the following medical records:

- November 2002 Kaiser Permanente ("Kaiser") treatment notes documenting Plaintiff had "complained of headaches for four months, worse with physical activity." (AR 22.) A CT scan of Plaintiff's head was normal, and Plaintiff reported good results with over the counter

medication for his headaches. (AR 22 citing AR 1088–90.)

- January 2003 Kaiser treatment notes documenting Plaintiff "complained of persistent headaches occurring daily" and "chronic fatigue and difficulty sleeping." (AR 22.) Plaintiff was not interested in taking medication and "reported improved allergy symptoms since moving residences." (Id.) Plaintiff's physical examination was noted as normal. (AR 22 citing AR 1090–93.)

- February 2003 Kaiser treatment notes documenting Plaintiff "reported no significant improvement in his fatigue with CPAP use," and a CT scan of his "brain [sic] was unremarkable." (AR 22 citing AR 1094–96.)

- March 2003 Kaiser treatment notes documenting Plaintiff "continued to complain of headaches" and "reported an inability to perform his activities of daily living from feeling tired." (AR 22.) Plaintiff reported that "his headaches disappeared and his fatigue improved significantly with allergy medication." (AR 22 citing AR 1097–99.)

- April 2003 Kaiser treatment notes documenting Plaintiff reported that "his headaches were relieved with Motrin, but he was not currently taking any medication for his headaches." (AR 22 citing AR 1100–01.)

- May 2003 Kaiser treatment notes documenting Plaintiff "complained of excessive fatigue and headaches," and Plaintiff's "physical examination was normal." (AR 22.) "It was noted that anxiety and depression may be causing his symptoms." (AR 22 citing AR 1101–03.)

- July 2003 Kaiser treatment notes revealed Plaintiff "complained of ongoing headaches" and "denied any associated symptoms." (AR 22.) Plaintiff reported "mild improvement of his headaches with medication from Mexico." (Id.) Plaintiff continued to report "overwhelming fatigue and headaches." (Id.) An "extensive work-up" was negative. (AR 22 citing AR 1106–08.)

- March 2006 Tri-Life Health PC ("Tri-Life") treatment notes revealed Plaintiff "complained of chronic fatigue and headaches" and underwent "detoxification" treatment at Tri-Life in 2006. (AR 22 citing AR 1136–1269.)

**4. Analysis**

The ALJ satisfied step one when he found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 21); accord Vasquez, 572 F.3d at 591 (finding ALJ "satisfied the first prong of the ALJ's inquiry regarding the credibility of [plaintiff's] complaints" where the "ALJ acknowledged that [plaintiff's] injuries could reasonably be expected to produce some of the pain and other symptoms alleged") (citation modified).

The ALJ, however, erred at the second step, which allows the ALJ to reject Plaintiff's testimony about the severity of his pain only by providing "specific, clear, and convincing" reasons supported by substantial evidence. See Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015) (holding the ALJ must provide clear and convincing reasons to reject testimony to ensure testimony is not rejected arbitrarily); see also Leza v. Kijakazi, No. 21-16079, 2022 WL 819782, at *2 (9th Cir. Mar. 17, 2022) (citing Garrison, 759 F.3d at 1009.) The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001). While the ALJ may "provide a relatively detailed overview of [plaintiff's] medical history, 'providing a summary of the medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'" Lambert, 980 F.3d at 1278 (quoting Brown-Hunter, 806 F.3d at 494). Failure to identify specific testimony will render the Court unable to review the ALJ's determination without "substitut[ing] our conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions." Treichler, 775 F.3d at 1103; see also Brown-Hunter, 806 F.3d at 494 (finding "the inconsistencies identified independently by the district court cannot provide the basis upon which we can affirm the ALJ's decision").

Here, the ALJ did not meet the clear and convincing standard because he failed to "specifically identify" which testimony he did not find credible or explain why. (AR 21–

24.); Holohan, 246 F.3d at 1208.[4] The ALJ supported his step two finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" by summarizing Plaintiff's testimony and select medical evidence. (AR 21–22.) This boilerplate language and vague reference to Plaintiff's testimony does not provide "specific, clear, and convincing" reasons supported by substantial evidence for discounting a claimant's subjective testimony. See, e.g., Treichler, 775 F.3d at 1103 (holding the same boilerplate statement "falls short of meeting the ALJ's responsibility provide a discussion of the evidence and the reasons" for rejecting plaintiff's subjective testimony) (citation modified); see also Vasquez, 572 F.3d at 592 (finding the "vague allegation that [plaintiff's claims] were 'not consistent with the objective medical evidence'" was inadequate to reject plaintiff's subjective symptom testimony).

Based on the foregoing, the Court finds the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom testimony. Moreover, this error was not harmless because it prevents the Court from conducting a meaningful review of the ALJ's findings. See Brown-Hunter, 806 F.3d at 494 (finding ALJ's improper discrediting of plaintiff's testimony is not harmless error because the Court "cannot discern the agency's path [where] ALJ made only a general credibility finding without providing any reviewable reasons why she found [the plaintiff's] testimony to be not credible.")

**B. Whether the ALJ's RFC Determination is Supported by Substantial Evidence**

Plaintiff also argues the ALJ's RFC determination is not supported by substantial evidence. (ECF No. 15 at 4–10.) The Commissioner counters the ALJ properly

[4] The Commissioner argues the ALJ properly discredited Plaintiff's testimony based on normal findings and failure to seek treatment, and gaps in treatment. (ECF No. 18 at 18–19.) However, the ALJ did not offer these reasons as a basis for discrediting Plaintiff's testimony and the Court's review is limited to the reasons stated in the ALJ's decision. Burrell v. Colvin, 775 F.3d 1133, 1139 (9th Cir. 2014) (declining defendant's argument that the ALJ rejected plaintiff's testimony based on medical findings because the ALJ "never stated that he rested his adverse credibility determinations on those findings").

determined Plaintiff's RFC based on all the evidence in the record and "the fact that the ALJ's RFC was not identical to any medical opinion or the prior administrative medical findings (PAMF) does not deprive the ALJ's RFC assessment of substantial evidence support." (ECF No. 18 at 7–16.)

**1. Applicable law**

The RFC is a claimant's ability to do work-related activities on a sustained basis (i.e., eight hours a day, five days per week). Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling ("SSR") 96-8P, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). It represents the maximum amount of work a claimant can perform despite their limitations, based on all relevant evidence in the record. 20 C.F.R. § 416.945(a)(1); 20 C.F.R. § 404.1545(a)(1). In making this finding, the ALJ must consider all the claimant's medically determinable impairments, including those that are non-severe. 20 C.F.R. § 404.1545(a)(2); see also Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting SSR 96-8P, 1996 WL 374184, at *5). "The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not." Buck, 869 F.3d at 1049.

The ALJ must consider the claimant's testimony regarding their capabilities, as well as all relevant evidence, including medical records, lay evidence, and pain. Chaudhry v. Astrue, 688 F.3d 661, 670 (9th Cir. 2012); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006); SSR 96-8P, 1996 WL 374184, at *5. The ALJ's RFC determination also must be supported by "the opinion of a treating or examining physician" describing "[p]laintiff's level of functional limitation." Hayes v. Colvin, No. 16-CV-140-JLS, 2016 WL 11281409, at *6 (S.D. Cal. Dec. 19, 2016) (citation modified); see also Tackett v. Apfel, 180 F.3d 1094, 1103 (9th Cir. 1999) (finding error where "[t]here is no medical evidence to support the ALJ's [RFC] finding"). "[T]he ALJ may not rely on his own unsupported interpretation of the medical evidence." Ellen S. v. O'Malley, No. 22-CV-1622-DEB, 2024 WL 584437, at *2 (S.D. Cal. Feb. 12, 2024) (citation modified). When there is ambiguous or inadequate evidence in the record, the ALJ has a duty to develop

the record, regardless of whether plaintiff is represented by counsel. McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

**2. Summary of medical opinions**

The ALJ considered the following medical opinions when formulating Plaintiff's RFC:

- David Chun, MD: Dr. Chun treated Plaintiff and prescribed him medications between October 10, 2002, and January 7, 2003. (AR 1267–69.) On March 21, 2003, Dr. Chun wrote a letter on behalf of Plaintiff explaining Plaintiff's "symptoms improve when away from the work environment for a few days and worsens when he returns to work." (AR 255, 398.) Dr. Chun noted an allergen in the work environment may have caused Plaintiff's symptoms. (Id.)

- Roger Billica, MD, FAAFP: Dr. Brillica treated Plaintiff for chronic fatigue syndrome and fungal infections from January 2006 to February 2008. (AR 395, 1141, 1196–1224.) On October 17, 2007, Dr. Billica wrote a letter on behalf of Plaintiff with the subject line "Medi-Cal Insurance coverage for [Plaintiff]." (AR 395, 1141.) Dr. Billica stated he had been treating Plaintiff since January 2006 for chronic fatigue syndrome and fungal infections. (Id.) Dr. Billica opined that Plaintiff "continues to be seriously impaired with his fatigue and is unable to work and is barely functional for activities of daily living." (Id.) Dr. Billica noted, "[Plaintiff] suffers from chronic headaches, insomnia, poor mental focus, and extreme fatigue." (Id.)

- Dan O. Harper, MD: Dr. Harper treated Plaintiff for chronic fatigue syndrome from April 2008 through April 2012. (AR 396.) On April 3, 2012, Dr. Harper wrote a letter to Plaintiff's homeowners association requesting his family be allowed to continue to care for Plaintiff at his residential complex. (Id.) Dr. Harper stated he had been treating Plaintiff for chronic fatigue syndrome since 2008. (Id.) Dr. Harper stated, "[t]here are times that [Plaintiff] is bedridden for weeks, and other times [Plaintiff] is 'functional' but very fatigued." (Id.) Dr. Harper stated Plaintiff's mother and stepfather were his caregivers during "times of disability," noting these periods were "most of the time now, but getting less severe or prolonged." (Id.)

- Nisha Singh, MD: Dr. Singh, a state agency medical consultant, reviewed Plaintiff's medical records and prepared a Disability Determination Explanation report dated August 26, 2022. (AR 52–60.) Dr. Singh opined the "evidence available is insufficient to assess severity and limitation." (AR 57.) He noted "[t]here is no indication that there is a medical opinion from any medical source" and there were "[n]o RFC/[Mental] RFC assessments are associated with this claim." (AR 58.)

- M. Mazuryk, MD: Dr. Mazuryk, a state agency medical consultant, reviewed Plaintiff's medical records and prepared a Disability Determination Explanation report dated December 22, 2022. (AR 61–69.) Dr. Mazuryk, opined "there is essentially no useful [Medical Evidence of Record] prior to [Date Last Insured]," and there is "insufficient evidence to even determine a physical [Medically Determinable Impairment] during this timeframe." (AR 65.) Dr. Mazuryk noted "[t]here is no indication that there is a medical opinion from any medical source" and "[n]o RFC/[Mental] RFC assessments are associated with this claim." (AR 67.)

**3. The ALJ's RFC finding**

The ALJ determined Plaintiff "had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except he was unable to climb ladders, ropes, or scaffolds. He was able to occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He was able to perform simple work." (AR 21.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 CFR 404.1567(b).

The ALJ supported his RFC finding by explaining he "considered all symptoms and to the extent to which these symptoms can reasonably be accepted as consistent with

the objective medical evidence and other evidence," including the medical opinions and prior administrative findings. (AR 21.)

The ALJ then summarized Plaintiff's subjective symptom testimony and select Kaiser treatment notes and found Plaintiff's testimony was "not entirely consistent with the medical evidence and other evidence in the record," as discussed supra. (AR 21–22 citing AR 178–187, 198–203, 204–210.)

Next, he summarized the five medical opinions above and found none of these opinions to be persuasive. (AR 23.) He reported he also considered non-medical opinions provided by Plaintiff's family and friends and found "certain aspects of their opinions" were consistent with the ALJ's RFC determination, but the opinion that Plaintiff "is unable to perform any basic work activity is inconsistent with the record." (AR 24 citing 228, 245, 248.) Ultimately, the ALJ concluded "through the date last insured, the objective medical evidence . . . established that [Plaintiff] had a greater sustained capacity than [he] allege[d]." (Id.)

**4. Analysis**

Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence because there is no medical opinion or other evidence supporting the ALJ's RFC finding. (ECF No. 15 at 4–10.) The Commissioner responds the RFC determination does not need to "match a particular medical opinion or prior administrative medical finding" to be supported by substantial evidence. (ECF No. 18 at 7–8, 12.)

The Court first notes the ALJ based his RFC finding in part on Plaintiff's subjective symptom testimony, which the Court has already determined was improperly discredited. The RFC determination is, therefore, not supported by substantial evidence because of this error. See Ferguson v. O'Malley, 95 F.4th 1194, 1199 (9th Cir. 2024) ("Substantial evidence does not support an ALJ's RFC assessment if the ALJ improperly rejected [the claimant's] testimony as to the severity of his pain and symptoms.") (citation modified).

The RFC finding is also not supported by substantial evidence because there is no medical opinion or other evidence to support the ALJ's finding regarding Plaintiff's functional abilities. (See AR 58, 67.) (State agency medical consultants Dr. Singh and Dr. Mazuryk individually reported there was no medical opinion regarding Plaintiff's RFC/Mental RFC in the record); see also Ellen S., 2024 WL 584437, at *2–3 (noting two state agency consultants recognized the record lacked any medical opinion or other evidence regarding plaintiff's functional abilities and finding RFC was not supported by substantial evidence without this evidence); Hayes, 2016 WL 11281409, at *6–8 (finding an RFC is not supported by substantial evidence when there is no medical opinion as to the functional abilities of the plaintiff); Howell v. Kijakazi, No. 20-CV-2517-BLM, 2022 WL 2759090, at *7 (S.D. Cal. July 14, 2022) ("Barring a few exceptions, an ALJ must have a doctor's opinion of a claimant's functional capacity in order for there to be substantial evidence supporting the decision.").

Based on the foregoing, the Court finds the ALJ's RFC finding is not supported by substantial evidence. Moreover, this error is not harmless because the ALJ's RFC determination directly affects the nondisability determination. See Ellen S., 2024 WL 584437, at *3–4 ("A properly formulated RFC might support a conclusion that Plaintiff was not disabled.").

## VI. CONCLUSION

The reviewing court may enter a "judgment affirming, modifying, or reversing" the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the case to the Social Security Administration for further proceedings. Id. The reviewing court has discretion in determining whether to remand for further proceedings or award benefits. Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision. Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative

proceedings, where the record has been fully developed, or where remand would unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985); Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980).

In this case, Plaintiff asks this Court to reverse and remand for further proceedings. (ECF No. 15 at 14.) The Court finds that remand for further proceedings is warranted because additional administrative proceedings could remedy the defects in the ALJ's decision. Therefore, the Court **ORDERS** judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this matter for further administrative proceedings consistent with this Order and pursuant to sentence four of 42 U.S.C. § 405(g). The Court **DIRECTS** the Clerk of Court to close the case.

Dated: August 31, 2026

Honorable Michael S. Berg
United States Magistrate Judge